UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | 5:21-MJ-02084-003 |
| | § | |
| GREGORIO GONZALEZ-BARRAGAN | § | |

**PROBABLE CAUSE FINDING**

**I.     Facts**

Defendant GREGORIO GONZALEZ-BARRAGAN was charged by Criminal Complaint on September 14, 2021 with conspiracy to use interstate commerce facilities in the commission of a murder-for-hire, in violation of Title 18, United States Code Section 1958. (Dkt. No. 1). On September 29, 2021, the Court held a preliminary examination hearing to determine whether there was probable cause to detain Defendant. At the preliminary examination hearing, the Government called as its sole witness DEA Special Agent Pedro Martinez.

Special Agent Martinez testified to a summary of the complaint's allegations. *Id.* On September 11, 2021, DEA Agents were informed by the Laredo Police Department's Gang Unit of a suspected drug-related murder-for-hire plot. (9/29/21 Hearing at 3:13). Based on information from a confidential cooperator, agents learned that three *sicarios* (hitmen) affiliated with the Cartel Del Noreste had traveled from Nuevo Laredo, Mexico to Laredo, Texas to kidnap or kill the victim. (*Id.* at 3:15, 3:40-41). They were instructed by a coordinator in Mexico to drive to the victim's home, steal the narcotics and money found inside, and "leave no witnesses." (*Id.* at 3:28-29, 3:40-41).

DEA agents began monitoring the phone calls of the cooperator. (*Id.* at 3:13). The plot's coordinator in Mexico had introduced the cooperator to GONZALEZ-BARRAGAN and co-defendant REYNA-ZAPATA. (*Id.* at 3:26-27). Days prior to the arrest, the cooperator met with GONZALEZ-BARRAGAN and REYNA-ZAPATA, and they drove past the victim's home in Laredo to scope it out. (*Id.* at 3:31). Besides GONZALEZ-BARRAGAN and REYNA-ZAPATA, there was a third person involved because co-defendant REYNA-ZAPATA referred to the group tasked with the job as "two of us, and an old man." (*Id.* at 3:17, 3:36-37).

On September 13, the cooperator called REYNA-ZAPATA and asked what weapons he wanted. REYNA-ZAPATA replied "two long, and two short" – indicating he wanted two rifles, and two handguns. (*Id.* at 3:30-33). On that call, the cooperator overheard co-defendant MARTINEZ-PADILLA complain about not yet having a car or weapons. MARTINEZ-PADILLA also complained that they were being paid too little, that the job "should not take this long," and that "we usually just come, do what we need to do, then leave." (*Id.* at 3:36-7).

Later that day, the cooperator called MARTINEZ-PADILLA, saying he would pick up the "three of them" and take them to retrieve a vehicle with weapons. (*Id. at* 3:27-28). The cooperator picked up GONZALEZ-BARRAGAN, REYNA-ZAPATA, and MARTINEZ-PADILLA together on the corner of Springfield and Ash in Laredo, Texas, and drove them all to the Academy Sports Store on Bob Bullock Loop where the second vehicle was parked. (*Id.* at 3:27-28). As GONZALEZ-BARRAGAN and co-defendants attempted to enter the second vehicle, they were apprehended and arrested by agents. (*Id.* at 3:23). As previously described by co-defendant REYNA-ZAPATA, the trio was made up of the two younger men, and the elder MARTINEZ-PADILLA.

At the scene of arrest, agents discovered that GONZALEZ-BARRAGAN and REYNA-ZAPATA carried identical "Blu Brand" cell phones, which according to Special Agent Martinez are inexpensive and disposable. (*Id.* at 3:16, 3:29-31). The phones only had each others' numbers programmed into them, with no other saved contacts. *Id.* According to the cooperator, the coordinator in Mexico supplied the cooperator, GONZALEZ-BARRAGAN, and REYNA-ZAPATA with the cell phones in order to communicate with each other. (*Id.* at 3:31, 3:40).

In a post-arrest Mirandized statement, GONZALEZ-BARRAGAN admitted to being a Mexican national who had traveled into the U.S. a few days prior. (*Id.* at 3:36). He said he was in Laredo to work for his uncle, then changed his story and explained he was in Laredo to drive a car back to Mexico. *Id.*

Under cross-examination, Special Agent Martinez acknowledged that GONZALEZ-BARRAGAN was never overheard on any of the calls with the cooperator. (*Id.* at 3:19). Agent Martinez acknowledged that he did not have personal knowledge of the arrest at the Academy Sports Store but observed the arrest on-site through a camera. (*Id.* at 3:19).

## II. Analysis

Preliminary examination hearings exist purely to determine if there is probable cause to detain a defendant pending a grand jury hearing. *United States v. Johnson*, 514 F.2d 92, 94 (5th Cir. 1975); *United States v. Coley*, 441 F.2d 1299, 1301 (5th Cir. 1971); *see also* 1 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure*, Criminal, § 91 (4th ed. 2014) (citing Fed. R. Crim. P. 5.1(e)). To order detention of a defendant pending a grand jury hearing, the Magistrate Judge must find probable cause to believe (1) that an offense has been committed, and (2) that the defendant committed the offense. *See* Fed. R. Crim. P. 5.1(e). Probable cause exists when the government presents "evidence sufficient to cause a person of ordinary prudence and

caution to conscientiously entertain a reasonable belief of the accused's guilt." *United States v. Lucio*, Cr. No. 5:06-MJ-930, 2006 WL 1663756, at *2 (S.D. Tex. June 13, 2006); see also *United States v. Banuelos-Romero*, 597 F.3d 763, 768 (5th Cir. 2010) ("Proof of probable cause requires less evidence than … proof beyond a reasonable doubt — but more than 'bare suspicion.'") (quoting *United States v. Rayborn*, 872 F.2d 589, 593 (5th Cir. 1989)). If the Court finds that there is "no probable cause to believe an offense has been committed or the defendant committed it, the magistrate judge must dismiss the complaint and discharge the defendant," but this does not preclude the government from later prosecution of the charge in the future. FED. R. CRIM. P. 5.1(f).

Defendant is charged by Criminal Complaint with Conspiracy to Use Interstate Commerce Facilities in the Commission of a Murder-for-Hire, in violation of Title 18, U.S. Code Section 1958. The federal statute criminalizes one who "use[s]…any facility in interstate or foreign commerce, with intent that a murder be committed…as consideration for a promise or agreement to pay[] anything or pecuniary value." Title 18, U.S.C. § 1958. The government must establish probable cause for every element of federal murder-for-hire conspiracy: that there was (1) an agreement by two or more persons to achieve the unlawful purpose of interstate murder-for-hire; that (2) Defendant knowingly and voluntarily participated in the agreement; and (3) any of the conspirators committed an overt act in furtherance of the crime. *See* Title 18, U.S. Code Section 1958; *see also U.S. v. Tolliver*, 400 Fed.Appx. 823, 833-34 (5th Cir. 2010), c*iting U.S. v. Blackthorne*, 378 F.3d 449, 453 (5th Cir. 2004). Based on the testimony presented at the hearing, the government has met its burden of showing probable cause for all three elements.

*First,* Special Agent Martinez's testimony established probable cause of an agreement between two or more people to carry out a murder-for-hire using facilities of interstate or foreign commerce. There was ample testimony as to the jurisdictional requirement of this federal

violation. The plot was being orchestrated from Mexico, and Defendants GONZALEZ-BARRAGAN, REYNA-ZAPATA, and MARTINEZ-PADILLA had crossed the border into Laredo, Texas, to carry out the plan. Defendants GONZALEZ-BARRAGAN and REYNA-ZAPATA later drove on roads in Laredo to scope out the victim's home and drove on roads from the pick-up location on Springfield to the Academy Sports Store where the second vehicle was parked. (9/29/21 Hearing at 3:31, 3:37); *see U.S. v. Marek,* 238 F.3d 310 (5th Cir. 2001) (intrastate use of any facility of interstate commerce satisfies the jurisdictional element of the statute). Defendants also used telecommunications, the supplied "Blu Brand" cell phones, to plan and coordinate the murder. (*Id.* at 3:29-31)*; see U.S. v. Cisneros*, 456 F.Supp.2d 826 (S.D. Tex. 2006) (international telephone calls between coconspirator and hired killer about murder plot satisfied the federal murder-for-hire statute's jurisdictional requirement).

Special Agent Martinez's testimony also established probable cause of an agreement between GONZALEZ-BARRAGAN and the other co-defendants to commit the murder-for-hire. Co-defendant REYNA-ZAPATA was instructed over the phone by a coordinator in Mexico to steal all the drugs and money in the victim's home, and "leave no witnesses." (9/29/21 Hearing at 3:28-29, 3:40-41). The co-defendants spoke about obtaining weapons and a vehicle to kill or kidnap their victim. (*Id.* at 3:30-33, 3:37). MARTINEZ-PADILLA was overheard on a phone call complaining about their compensation. (*Id.* at 3:36-7). According to the cooperator, the coordinator in Mexico supplied GONZALEZ-BARRAGAN, REYNA-ZAPATA, and the cooperator with cell phones to contact each other. (*Id.* at 3:16, 3:29-32, 3:40). The cooperator believed that the three men were affiliated with the Cartel Del Noreste drug cartel. (9/29/21 Hearing at 3:39). These facts support an inference that GONZALEZ-BARRAGAN and the others joined together to accomplish the crime.

*Second,* there is probable cause that Defendant knowingly and voluntarily participated in the conspiracy. GONZALEZ-BARRAGAN traveled from his home country of Mexico to the U.S. days prior to the arrest. GONZALEZ-BARRAGAN joined REYNA-ZAPATA and the cooperator in a drive-by to scope out the victim's home. (*Id*. at 3:31-21). GONZALEZ-BARRAGAN traveled with REYNA-ZAPATA and MARTINEZ-PADILLA to pick up the vehicle loaded with weapons. (*Id.* at 3:38). At the scene of arrest, GONZALEZ-BARRAGAN had on his person the same "Blu Brand" cell phone as REYNA-ZAPATA. (*Id.* at 3:31). The only phone number programmed in GONZALZ-BARRAGAN'S phone was for REYNA-ZAPATA. (*Id.*). Because GONZALEZ-BARRAGAN traveled to the U.S., scoped out the victim's home, drove with co-defendants to the loaded vehicle, and possessed the same disposable cell phone with stored numbers linked to the others, there is sufficient evidence of his intent to participate in the conspiracy.

*Third,* there is probable cause that Defendant and his co-conspirators committed at least one overt act in furtherance of the planned murder-for-hire. REYNA-ZAPATA and GONZALEZ-BARRAGAN possessed identical cell phones apparently supplied for the exclusive use of coordinating and carrying out the attack on the victim. Days before their arrest, the defendants scoped out the victim's home before the intended attack. GONZALEZ-BARRAGAN was one in the trio that traveled from a pick-up location to a vehicle expected to be loaded with firearms that would be the means of transportation for the group.

Defendant argues there is insufficient evidence that his activity was in exchange for pecuniary value. The Court disagrees. The government presented testimony that GONZALEZ-BARRAGAN was believed to be affiliated with the Cartel del Noreste, and that the murder plot was related to drug trafficking and the retrieval of narcotics. In organized crime structures,

individuals are compensated for their work. This inference is bolstered by the fact that co-defendant MARTINEZ-PADILLA was overheard complaining about the amount they were being paid. Therefore, there is probable cause that GONZALEZ-BARRAGAN conspired to commit murder in exchange for pecuniary value. The government has met its burden of showing probable cause for all elements of conspiracy to commit murder-for-hire.

## III. Finding

Based on the evidence presented, **THE COURT FINDS THAT THERE IS PROBABLE CAUSE** to hold Defendant to answer in district court, in accordance with Federal Rule of Criminal Procedure 5.1.

IT IS SO ORDERED.

DONE at Laredo, Texas, this 5th day of October, 2021.

*Diana Song Quiroga*
DIANA SONG QUIROGA
UNITED STATES MAGISTRATE JUDGE